UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

WILL SITTON,

Plaintiff(s),

v.

LVMPD, et al.,

Defendant(s).

Case No. 2:17-CV-111 JCM (VCF)

ORDER

Presently before the court is defendants Jacqueline Bluth and Elissa Luzaich's motion to dismiss. (ECF No. 21). Plaintiff Will Sitton filed a response (ECF No. 37), to which defendants replied (ECF No. 40).

Also before the court is defendants Franc Cadet, Kelly Camp, Darren Mecham, Trevor Neville, Lyle Rohan, Andrew Saavedra, Jared Senior, Leo Sloan, and Theodoros Snowden's ("the corrections officers") partial motion to dismiss. (ECF No. 24). Plaintiff filed a response (ECF No. 38), to which defendants replied (ECF No. 39).

Also before the court is defendant David Ferrara's first motion to dismiss. (ECF No. 28). Plaintiff filed a response (ECF No. 41), to which defendant replied (ECF No. 44).

Also before the court is defendant Ferrara's second motion to dismiss. (ECF No. 42). Plaintiff filed a response (ECF No. 52), to which defendant replied (ECF No. 58).

Also before the court is defendant NaphCare Medical's ('NaphCare") motion to dismiss. (ECF No. 74). Plaintiff filed a response (ECF No. 82), to which defendant replied (ECF No. 86).

Also before the court is plaintiff's motion to extend time to file a response to defendant NaphCare's motion to dismiss. (ECF No. 81).

**James C. Mahan**
**U.S. District Judge**

Also before the court is plaintiff's motion for reconsideration. (ECF No. 98). Defendant Farrara filed a response (ECF No. 101), to which plaintiff replied (ECF No. 107).

Also before the court is defendant Las Vegas Review Journal's ("LVRJ") motion to dismiss. (ECF No. 104). Plaintiff filed a response (ECF No. 110), to which LVRJ replied (ECF No. 111).

**I.      Facts**

The following is an abridged summary of the counts in plaintiff's complaint that survived screening.

    *a. Count one*

    *i.     Due process*

Plaintiff alleges that officer Neville classified plaintiff, a pretrial detainee, as "max status" to punish plaintiff. (ECF No. 13 at 20). Under this classification, jail officials confined plaintiff to his cell for 23 hours a day on weekdays and 24 hours a day on weekends, denied plaintiff all programs, restricted plaintiff's television viewing options, restricted visitation, and restricted commissary. *Id.* At the time the complaint was filed, plaintiff had been in solitary maximum lock up for over 730 days. *Id.*

Officer Baker required max-status prisoners to wear full restraints at all times when not in their cells. *Id.* at 21. Due to this punitive policy, plaintiff received injuries to his ankles and wrists. *Id.* On December 4, 2013, officer Camp, who had seen plaintiff's injuries, forced plaintiff to wear restraints despite plaintiff's open wounds. *Id.* Officer Mowery also made plaintiff wear restraints despite plaintiff's wounds. *Id.*

In March 2015, jail officials changed the full restraint procedure and instead handcuffed prisoners behind their backs. *Id.* at 22. Officers created pain with the handcuffs by cinching down on plaintiff's wrists when leading him into a cage or room. *Id.*

On May 8, 2015, officer Mashore and plaintiff disagreed about plaintiff's tier time. *Id.* Mashore became verbally threatening and filed a report which falsely stated that plaintiff had threatened Mashore. *Id.* Jail officials made plaintiff pack up his property to a hospital isolation ward. *Id.* Later that day, officer Judd moved plaintiff back to a max module. *Id.*

On August 18, 2015, after an incident with officer Gardea, officers Cadet and Saavedra interrogated plaintiff about the incident. *Id.* at 28. Saavedra would not permit plaintiff to press charges against Gardea. *Id.* Instead, Saavedra wrote plaintiff up and used the false details that Gardea had given Saavedra. *Id.* Sands and Dumer, officers on the conduct adjustment board ("CAB"), went to plaintiff's cell, did not conduct a hearing, did not want to know who plaintiff's witness was, and walked away. *Id.* A week later, Sands and Dumer mailed plaintiff a letter sanctioning plaintiff to 60 days confinement which prohibited commissary and visitation. *Id.* This sanction caused extreme hardship because jail officials did not serve enough food to properly feed a inmates. *Id.* at 23, 28. As a result, inmates had to supplement their meals by purchasing food from the commissary. *Id.* Sands and Dumer's sanctions caused plaintiff to lose 70 pounds. *Id.* at 28.

  *ii. Conditions of confinement*

For two months around June 8, 2015, plaintiff did not have any hot water or showers to clean himself. (ECF No. 13 at 25). Plaintiff had to take cold showers because there were no other options. *Id.* Additionally, while plaintiff was on commissary restriction, he lacked adequate nutrition due to reduced food portions. *Id.* at 26. Plaintiff suffered from extreme hunger pains, physical/mental trauma, and fatigue. *Id.*

From October 31, 2015 through December 1, 2015, only cold air blew through plaintiff's cell vents. *Id.* at 37. Plaintiff repeatedly asked officers and sergeants for heat. *Id.* In December, the temperature in the cells was extremely cold and there was still no heat. *Id.* Plaintiff caught colds, his joints hurt, he had a hard time walking, and could not sleep because of the cold temperature. *Id.* Jail officials denied plaintiff's requests for extra blankets and extra food portions for warmth. *Id.*

  *iii. Excessive force*

On August 18, 2015, Gardea punished plaintiff for complaining about the lack of medical care he was receiving and about the loss of tier time. (ECF No. 13 at 27). Gardea's brother had denied plaintiff's tier time. *Id.* While plaintiff was in the day room, Gardea clamped down twice on plaintiff's handcuffs to cause plaintiff pain and then clamped down again when plaintiff was in

**James C. Mahan**
**U.S. District Judge**

his cell. *Id.* Gardea forcibly clamped down and dragged the cuffs up and down plaintiff's arm which caused severe injuries such as bruising and swelling to plaintiff's right arm and wrist. *Id.* Gardea tried to put plaintiff's arm through the food slot with the cuffs on until Gardea's brother told Gardea to stop and take the cuff off of plaintiff. *Id.* Jail officials had to x-ray plaintiff due to the extensive bruising to his right arm, wrist, and hand. *Id.*

    b. *Count two*

On April 11, 2012, while on tier time, Jane Doe nurse approached plaintiff but would not apply plaintiff's pain numbing patch as prescribed. (ECF No. 13 at 38). Jane Doe insulted plaintiff and was "racially disrespecting" plaintiff in front of officers Sloan and Rohan who were black. *Id.* Due to plaintiff's remarks to Jane Doe, Sloan ordered plaintiff to lock down. *Id.* Even though plaintiff complied, Sloan would not shut plaintiff's cell door. *Id.* When plaintiff asked Sloan to shut his cell door, Sloan refused and looked like he was going to attack plaintiff causing plaintiff to stand up ready to defend himself. *Id.* Rohan ran into the cell and slammed plaintiff into the corner of the cell and snapped plaintiff's previously injured neck. *Id.* Barrowes refused to permit plaintiff to press charges. *Id.*

Plaintiff filed complaints against Sloan and Rohan for harassment and intimidation after they were assigned to plaintiff's housing module. *Id.* at 39. When Rohan moved plaintiff to a different cell, Rohan told plaintiff that he would give plaintiff a shot "at the title" when plaintiff was "out in gangster fashion." *Id.* Plaintiff alleges that he has been "racially prejudiced" by Sloan and Rohan and treated indifferently by officers Barrowes and Graham through "racial prejudice." *Id.*

    c. *Count three*

On February 28, 2013, jail officials were having a "cell search shakedown" for a weapon in plaintiff's module. (ECF No. 13 at 40). The SERT team performed the search and destroyed lots of paper work and personal property. *Id.* The SERT officers threatened inmates with serious injury or death if the inmates failed to comply and held shotguns at point blank range at the inmates' heads. *Id.*

While plaintiff was cleaning up his cell after the search, a SERT officer went into plaintiff's cell and told plaintiff to face the wall hands up. *Id.* After plaintiff complied, the officers cuffed plaintiff's hands behind his back and escorted plaintiff to the recreational yard and made plaintiff stand with his nose to the wall. *Id.* at 40-41. An officer told plaintiff to get down on his knees. *Id.* at 41. However, plaintiff could not get down because of his knee injuries. *Id.* Mecham tried to sweep plaintiff's legs out from underneath plaintiff. *Id.* Doe officers slammed plaintiff backwards and injured plaintiff's neck and head. *Id.* After plaintiff hit the concrete in handcuffs, Doe officers rolled plaintiff onto his back and stood on his back. *Id.* Another set of Doe officers and Cera cuffed plaintiff's ankles as tight as they could and stood on plaintiff's legs and ankles and pushed down. *Id.* The body weight caused injury to plaintiff's ankles and knees. *Id.* Doe officers and Cera pushed plaintiff's legs toward his head and caused pain in plaintiff's knees. *Id.* at 41-42.

In the meantime, plaintiff was suffocating from the Doe officers on his back. *Id.* at 42. After plaintiff returned to consciousness from the lack of air, Doe officer put a tazer in plaintiff's mouth. *Id.* Mendoza told Doe officer to push on plaintiff harder and to put the tazer in plaintiff's mouth. *Id.* When the officers stopped, plaintiff's boxers were pulled down to his knees and the officers laughed at plaintiff as they walked away. *Id.* Plaintiff went into convulsions. *Id.* Mendoza kicked plaintiff with his boot. *Id.* at 42-43.

According to plaintiff, the SERT officers had assaulted plaintiff for "political reasons." *Id.* at 43. Plaintiff requested medical help. *Id.* Plaintiff suffered from neck, head, wrist, and ankle injuries, was on pain medication four times a day, and his left side of his body would go numb. *Id.*

    d. *Count four*

On January 31, 2014, officer Billingsley knew that plaintiff had open sores and scrapes from the nylon restraints previously used on plaintiff's ankles. (ECF No. 13 at 45). Billingsley made plaintiff wear different, new, orange-painted, steel ankle restraints. *Id.* Billingsley fitted the restraints onto plaintiff's ankles. *Id.* The restraints fit very snuggly without plaintiff's body weight. *Id.* When plaintiff walked to his attorney visit, the ankle restraints dug into his open sores.

*Id.* The ankle restraints were too tight even on the loosest fitting. *Id.* Although Billingsley knew about the extreme pain and injuries that were occurring, he told plaintiff that it was a short walk and that plaintiff could put up with it. *Id.* Due to the pain the restraints caused, plaintiff had to cut his attorney visit short. *Id.* When jail officials removed his restraints, plaintiff's ankles were bleeding, indented, and bruised. *Id.* Officers Baker and McCasland were witnesses. *Id.*

    *e. Count five*

Plaintiff alleges that officer Storey, who was in charge of the property department, put plaintiff's mail in the property room because one part of plaintiff's mail did not comply with CCDC policy. (ECF No. 13 at 46). Storey confiscated plaintiff's entire mail and would not permit plaintiff to read the letters from his family or friends. *Id.* Storey would not let plaintiff read the letter about one of plaintiff's family members who had passed away. *Id.* Additionally, jail officials stopped plaintiff's magazine subscriptions because the magazines had too much advertising. *Id.* Jail officials stopped plaintiff from having a list of magazine and book order forms. *Id.* at 47. Despite this, Latino prisoners were allowed to have order forms and lists of various magazine services. *Id.* Plaintiff alleges that the mail room intentionally interfered with a person's religion and practice and knowledge of events. *Id.*

    *f. Count six*

On February 7, 2011, plaintiff complained about his handcuffs being too tight; having to lie on a cold, dirty floor near a toilet flood; and having his legal work scattered all over his cell. (ECF No. 13 at 48). As a result of complaining, officer Senior restrained plaintiff to a chair, used racial threats, and pulled the back of plaintiff's neck while ignoring plaintiff's pleas to stop due to the pain. *Id.* Due to the incident, plaintiff had pain, spasms, and headaches and could hear joints pop and scratch when he turned the wrong way. *Id.*

    *g. Count seven*

On July 23, 2014, as officer Snowden put restraints on plaintiff, plaintiff complained that the restraints were too small. (ECF No. 13 at 49). Snowden knew that plaintiff had oversized wrists and ankles. *Id.* Due to plaintiff's complaints, Snowden and Hines told plaintiff to lock down and said they would report that plaintiff had refused his tier time. *Id.* Plaintiff refused to

lock down because he had not refused his tier time. *Id.* Plaintiff stood and requested to see a sergeant about the matter. *Id.* After Snowden called for a sergeant, Snowden and Hines turned plaintiff around and struck plaintiff in the head. *Id.* at 49-50. Hines kicked and pounded plaintiff on the neck and head. *Id.* at 50. Before plaintiff blacked out, Hines called plaintiff a "white piece of shit." *Id.* A week later, jail officials sent plaintiff to the hospital for a CAT scan. *Id.* Plaintiff learned that he had a light concussion and a large bruise on the back of his head and left temple. *Id.*

### h. *Count eight*

On November 14, 2011, officer Bean set plaintiff up for having extra shirts in his cell. (ECF No. 13 at 51). While plaintiff was in his cell, Bean threatened bodily harm against plaintiff for the extra shirts in his cell. *Id.* Bean called for an officer escort to take plaintiff to segregation. *Id.* While plaintiff was packing up his property, Jane Doe officer came into the cell and shoved plaintiff against a desk. *Id.* Plaintiff complied with all of her orders. *Id.* While Jane Doe officer handcuffed plaintiff, plaintiff stood up because his back cramped up. *Id.* Bean and plaintiff "had some words" with each other and then John Doe sergeant tazered plaintiff. *Id.* The tazer shocked plaintiff unconscious. *Id.*

### i. *Count nine*

Plaintiff alleges that Naphcare had a standard practice of delaying medical care to inmates at the CCDC because it knew that the inmates would leave the detention center before medical care was absolutely necessary. (ECF No. 13 at 52). Although plaintiff had annual medical exams, the exam consisted of taking plaintiff's temperature, pulse, weight, and blood pressure. *Id.* However, Naphcare would not address any medical or dental needs. *Id.* Although plaintiff explained his concerns about pain, headaches, hypertension, and stomach pain, nurse Katie would not log his complaints into the system. *Id.*

Additionally, in order to receive medical care from Naphcare, plaintiff was forced to decide between paying for a medical co-pay to seek medical care or buying food to supplement the inadequate calories provided by jail officials. *Id.* at 53. Naphcare denied plaintiff medical care for injuries caused by officers because Naphcare could not charge plaintiff a co-pay under those

circumstances. *Id.* To avoid paying for extensive medical care caused by officers, Naphcare pumped inmate-patients with pain medication and forced inmates to seek treatment after leaving the CCDC. *Id.* Plaintiff could only receive eye vision services if he paid Naphcare $75.00 to transport him to an eye doctor. *Id.*

On August 19, 2015, a physician's assistant refused to continue plaintiff's pain medication even though that medication had worked for two years and permitted plaintiff to tolerate the pain caused by the officers. *Id.* at 54. Physician assistant Dannieal refused to reinstate the medication prescribed by Dr. Zinser who had quit Naphcare. *Id.* Due to the lack of pain medication, plaintiff suffered daily from shooting pain in his shoulder, neck, and chest. *Id.* Naphcare officials have not done anything about plaintiff's pain. *Id.*

From October 14, 2011 through January 17, 2016, plaintiff kited Naphcare about his knee pain caused by officers. *Id.* at 55. Naphcare ignored plaintiff's pleas for medical care and now plaintiff's knees have atrophied and have arthritis. *Id.* Plaintiff attaches his medical kites as exhibits. *Id.* at 56-92.

*j. Count ten*

In count ten, plaintiff alleges a state law claim for defamation of character against Ferrara, Wesley Juhl, LVRJ, Luzaich, and Bluth. (ECF No. 13 at 93-94). Plaintiff alleges that David Ferrara wrote two articles that the LVRJ published which contained defamatory statements. (ECF No. 13). Plaintiff further alleges that defendants Luzaich and Bluth, both prosecutors, made defamatory statements during the course of plaintiff's criminal trial (both in and outside the courtroom).

Plaintiff references two articles[1] published in the LVRJ that provide the source for his claims.

---

[1] In evaluating a Rule 12(b)(6) motion, courts can consider evidence on which the complaint "necessarily relies" if: (a) the complaint refers to the document; (b) the document is central to the plaintiff's claim; and (c) no party questions the authenticity of the document. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir.2006). If the plaintiff fails to introduce such a document, the defendant may do so as part of its motion. *See In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir.2002) (*citing Branch v. Tunnell*, 14 F.3d 449, 453–54 (9th Cir.1994)); *superseded by statute on other grounds as stated in In re Quality Systems, Inc. Litigation*, 865 F.3d 1130, 1146 (9th Cir. 2017).

**James C. Mahan**
**U.S. District Judge**

- 8 -

The first article, published in 2015, reads, in part,

> Prosecutors[2] say they are seeking capital punishment for Sitton in part because of his violent past. In Clark County, he has three felony and gross misdemeanor convictions dating back to 1994, according to court records. In each of those cases, sexual assault charges were pleaded down to lesser counts. Schafer [Sitton's girlfriend] faces life in prison without the possibility of parole.

(ECF No. 104-1).

The second article, published in 2016, reads, in part,

> A jury of eight women and four men found that aggravating factors in Will Sitton's past — three rape convictions, an attempted murder conviction, an attempted arson, a DUI, along with his checkered behavior behind bars — outweighed mitigating factors that could have spared him from capital punishment, including pleas from his mother and his ex-wife.

(ECF No. 104-2).

In addition to the above-referenced articles, plaintiff points to statements that Luzaich and Bluth made during the course of trial, in their capacity as prosecutors, regarding plaintiff's criminal history. (ECF No. 13 at 93-94). Plaintiff alleges that the foregoing statements were defamatory. (ECF No. 13).

## II.    Legal Standard

The court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although rule 8 does not require detailed factual allegations, it does require more than labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Furthermore, a formulaic recitation of the elements of a cause of action will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (citation omitted). Rule 8 does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. *Id.* at 678–79.

To survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Id.* A claim has facial plausibility when the plaintiff

---

[2] This is a reference to Luzaich and Bluth.

James C. Mahan
U.S. District Judge

- 9 -

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* When a complaint pleads facts that are merely consistent with a defendant's liability, and shows only a mere possibility of entitlement, the complaint does not meet the requirements to show plausibility of entitlement to relief. *Id.*

In *Iqbal,* the Supreme Court clarified the two-step approach district courts are to apply when considering a motion to dismiss. *Id.* First, the court must accept as true all of the allegations contained in a complaint. However, this requirement is inapplicable to legal conclusions. *Id.* Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.* at 678. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged – but not shown – that the pleader is entitled to relief." *Id.* at 679. When the allegations in a complaint have not crossed the line from conceivable to plausible, plaintiff's claim must be dismissed. *Twombly*, 550 U.S. at 570.

The Ninth Circuit addressed post-*Iqbal* pleading standards in *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The *Starr* court held:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Id.*

### III. Discussion

*a. The corrections officers' partial motion to dismiss*

In their motion to dismiss, the corrections officers argue that plaintiff's second, third, fourth, sixth, seventh, and eighth causes of action should be dismissed for failure to state a claim upon which relief can be granted based on the applicable statute of limitations. (ECF No. 24).

The statute of limitations applicable to civil rights claims under 42 U.S.C. § 1983 is that which applies to state law personal injury actions. *See Jones v. Blanas*, 393 F. 3d 918, 927 (9th Cir. 2004); *McDougal v. County of Imperial*, 942 F.2d 668, 672 (9th Cir. 1991). When a state has multiple limitations periods for different injury claims, the residual limitations period applies to

civil rights claims. *See Perez v. Seevers*, 869 F. 3d 425, 426 (9th Cir. 1989). Under, Nevada Revised Statute 11.190(4)(e), the residual limitations period for personal injury causes of action is two years. Therefore, in Nevada, the statute of limitations for civil rights claims stated pursuant to 42 U.S.C. § 1983 is two years. *See Chachas v. City of Ely*, 615 F. Supp. 2d 1193, 1202-03 (D. Nev. 2009). Under § 1983, a claim accrues when the plaintiff "knows or has reason to know of the injury which is the basis of the action." *See Cabrera v. City of Huntington Park*, 159 F. 3d 374, 379 (9th Cir. 1998).

Here, the conduct underlying plaintiff's second, third, fourth, sixth, seventh, and eighth causes of action all occurred over two years before plaintiff filed the instant suit. The most recent event alleged in those causes of action occurred on July 23, 2014, two and a half years prior to plaintiff filing his complaint. Therefore, plaintiff's second, third, fourth, sixth, seventh, and eighth causes of action are barred by the statute of limitations. *See Perez*, 869 F.2d at 426.

*b. Defendant Ferrara and the LVRJ's motions to dismiss*

Defendants Ferrara and the LVRJ move to dismiss plaintiff's defamation claim against them. (ECF No. 28, 104). Defendants cite multiple reasons why the claim should be dismissed. The court need only consider whether subject matter jurisdiction exists over the claim, as the court's holding on that topic necessitates dismissal of plaintiff's complaint.

As an initial matter, the court does not possess original jurisdiction to hear plaintiff's claim against Ferrara and the LVRJ. The claim presents a question of state law that does not contain an embedded federal question; therefore, no jurisdiction exists under § 1331. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). Further, there is no jurisdiction under § 1332 because all parties to the defamation claim are residents of Nevada. *See Strawbridge v. Curtiss*, 7 U.S. 267 (1806) (holding that diversity, in this context, requires "complete diversity"). Therefore, as complete diversity does not exist, the court cannot exercise jurisdiction under § 1332. As plaintiff does not plead or argue that any other federal statute would authorize jurisdiction in this context, the court will consider whether supplemental jurisdiction exists over plaintiff's defamation claim.

James C. Mahan
U.S. District Judge

- 11 -

"Supplemental jurisdiction allows federal courts to hear and decide state-law claims along with federal-law claims when they 'are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy.'" *Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 387 (1998) (citing 28 U.S.C. § 1367(a)). Title 28 U.S.C. § 1367(a) provides, in relevant part, as follows:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a). Where there is no overlap between the federal and state claims, supplemental jurisdiction is improper. *See U.S. ex rel. Hill v. Teledyne, Inc.*, 103 F.3d 143 (9th Cir. 1996).

Here, plaintiff is suing defendants Ferrara and LVRJ for statements published in the Las Vegas Review Journal that related to defendant's criminal trial. (ECF No. 13). These statements are tangentially related to plaintiff's § 1983 claims in that the events detailed in these claims would not have occurred but for plaintiff's 2015 criminal conviction. However, these claims do not form the same "case or controversy" such that the exercise of supplemental jurisdiction over them is proper. *See Schacht*, 524 U.S. at 387; *cf. Holton v. Conrad*, 24 F. Supp 3d 624, 626 (E.D.Ky. June 4, 2014) (holding that supplemental jurisdiction did not exist over a state law claim because plaintiff's § 1983 claim, which related to an excessive force incident, did not arise from a common nucleus of operative fact as plaintiff's state law claims regarding defendant's failure to respond to records requests, even though the requests were related to the excessive force incident). Therefore, the court will grant defendant Ferrara's first motion to dismiss and the LVRJ's motion to dismiss. *See Twombly*, 555 U.S. at 550.

Because the court holds that subject matter jurisdiction does not exist over the defamation cause of action, the court need not consider defendants' alternate grounds for dismissal. Further, the court will deny defendant Ferrara's second motion to dismiss to the extent it requests leave to brief the court on fees and costs incurred in defending against this lawsuit, as well as defendant's

James C. Mahan
U.S. District Judge

- 12 -

request for $10,000 in statutory damages. The court will otherwise deny defendant Ferrara's second motion to dismiss as moot.

### c. *Defendants Luzaich and Bluth's motion to dismiss*

Plaintiff's tenth cause of action names defendants Luzaich and Bluth. (ECF No. 13). As the court noted in its discussion of defendants Ferrara and the LVRJ's motion to dismiss, the court does not possess subject matter jurisdiction to hear plaintiff's state-law defamation claim. As Luzaich and Bluth are named in the defamation claim only, the court will dismiss plaintiff's claim against Luzaich and Bluth.

### d. *Defendant NaphCare's motion to dismiss*

Defendant NaphCare moves to partially dismiss plaintiff's ninth cause of action to the extent that the cause of action is based on incidents occurring outside of the applicable limitations period. (ECF No. 74).

As the court noted previously, the applicable statute of limitations for plaintiff's civil rights causes of action is two years. *See discussion section a, supra*. "While the language of Count IX is unclear regarding [the] date(s) of [any] alleged injury, Plaintiff attached 22 Medical/Dental/Psychiatric Request forms which were submitted to NaphCare during Plaintiff's incarceration at CCDC." (ECF No. 74); *see* (ECF No. 13 at 56-92). NaphCare notes that ten of the 22 forms were filed more than two years prior to plaintiff's initiation of the instant lawsuit. Therefore, plaintiff cannot pursue a cause of action based on these requests due to the two-year statute of limitations. *See Perez*, 869 F.3d at 426. The court will grant NaphCare's motion to dismiss.

### e. *Plaintiff's motion for reconsideration*

Plaintiff filed a motion for reconsideration of Magistrate Judge Ferenbach's order denying plaintiff's motion for reconsideration. Plaintiff's sole argument in support of his motion is that a magistrate judge does not have the authority to issue an order on a motion for reconsideration of a prior magistrate judge order.[3]

---

[3] Plaintiff also cites Federal Rule of Civil Procedure 60(b)(5) for the proposition that a court can grant relief in the interests of justice. (ECF No. 98). However, plaintiff's motion does not explain how the interests of justice favor granting the requested relief.

James C. Mahan
U.S. District Judge

- 13 -

Plaintiff filed his motion under Federal Rule of Civil Procedure 60(b). Rule 60 motions request relief from "final judgment[s]." In this case, Magistrate Judge Ferenbach's order denying plaintiff's motion for reconsideration was not a final judgment, and therefore plaintiff cannot obtain relief pursuant to Rule 60. Further, "A judicial officer, whether Magistrate or Judge, has inherent power to reconsider his own order." *United States v. Colombo*, 616 F. Supp. 780 (E.D.N.Y. 1985). Therefore, Magistrate Judge Ferenbach did not lack the authority to issue an order denying plaintiff's motion to reconsider. *See id.*

   *f. Summary*

The court will dismiss plaintiff's second, third, fourth, sixth, seventh, and eighth causes of action based on the applicable statute of limitations. The court will dismiss all allegations in plaintiff's ninth cause of action that fall outside the applicable statute of limitations. The court will dismiss plaintiff's tenth cause of action for want of jurisdiction.

**IV. Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendants Bluth and Luzaich's motion to dismiss (ECF No. 21) be, and the same hereby is, GRANTED, consistent with the foregoing.

IT IS FURTHER ORDERED that the correction officers' partial motion to dismiss (ECF No. 24) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that defendant Ferrara's first motion to dismiss (ECF No. 28) be, and the same hereby is, GRANTED, consistent with the foregoing.

IT IS FURTHER ORDERED that defendant Ferrara's second motion to dismiss (ECF No. 42) be, and the same hereby is, DENIED as moot.

IT IS FURTHER ORDERED that defendant NaphCare's motion to dismiss (ECF No. 74) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that plaintiff's motion to extend time (ECF No. 81) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that plaintiff's motion for reconsideration (ECF No. 98) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that defendant LVRJ's motion to dismiss (ECRF No. 104) be, and the same hereby is, GRANTED, consistent with the foregoing.

The clerk shall terminate the following parties from the case: Bluth, Luzaich, Mecham, Rohan, Senior, Sloan, Snowden,[4] Ferrara, LVRJ, and Juhl.

DATED July 30, 2018.

_____
UNITED STATES DISTRICT JUDGE

---

[4] As the corrections officers note in their partial motion to dismiss, "Officers sued pursuant to *only* those Counts should be dismissed." *See* (ECF No. 24 at 6) (emphasis added).