1
2
3
4                        UNITED STATES DISTRICT COURT
5                             DISTRICT OF NEVADA
6                                    * * *
7    WILL SITTON,                              Case No. 2:17-CV-111 JCM (VCF)
8                           Plaintiff(s),                    ORDER
9          v.
10   LVMPD, et al.,
11                          Defendant(s).
12
13          Presently before the court are defendant NaphCare, Inc.'s ("NaphCare") motion for
14   summary judgment and supplemental motion for summary judgment. (ECF Nos. 168, 265).
15   Plaintiff Will Sitton ("Sitton") responded in opposition. (ECF No. 278). NaphCare did not
16   reply and the time to do so has passed. *See* LR 7-2(b).
17          Also before the court is Sitton's motion to strike exhibits within NaphCare's motions.
18   NaphCare responded in opposition (ECF No. 271), to which Sitton replied (ECF No. 272).
19          Also before the court is NaphCare's motion for leave to file a surreply to Sitton's reply
20   (ECF No. 272). (ECF No. 274). Sitton responded in opposition. (ECF No. 275).
21          Also before the court is Sitton's motion for leave to file under seal his response to
22   NaphCare's supplemental motion. (ECF No. 278). NaphCare responded in opposition with a
23   countermotion to strike Sitton's response and to impose sanctions. (ECF No. 281). Sitton
24   responded to NaphCare's countermotion (ECF No. 282), to which NaphCare replied (ECF No.
25   283).
26   **I.     BACKGROUND**
27          This matter concerns Sitton's medical treatment during his time as a pretrial detainee
28   in the Clark County Detention Center ("CCDC").

James C. Mahan
U.S. District Judge

1      In 2009, Sitton arrived in the custody of CCDC pending his criminal trial in the Eighth

2  Judicial District Court of Nevada.  During Sitton's time in custody, NaphCare doctor, Dr.

3  Zinser, treated Sitton with pain and anti-inflammatory medication for Sitton's arthritis-related

4  knee pain.  This treatment continued until Dr. Zinser resigned in March 2015.

5      In January 2017, Sitton brought this action alleging that NaphCare unconstitutionally

6  refused to properly treat him after Dr. Zinser's retirement.  (ECF No. 13 at 52–55).  At the

7  motion to dismiss stage, the court dismissed several of Sitton's claims against NaphCare as

8  time barred.  (ECF No. 114).

9      Sitton's remaining claims against NaphCare regard NaphCare's alleged policy to deny

10  and delay treatment to save on treatment costs and NaphCare's alleged policy to improperly

11  charge co-pays for treatment to dissuade inmates from receiving proper medical care.

12      NaphCare originally moved for summary judgment in February 2020.  (ECF No. 168).

13  After extensive motions, hearings, and discovery disputes, the court entered a protective order

14  preventing the parties from disclosing certain confidential information to non-parties.  (ECF

15  Nos. 215, 216).  Thereafter, the court ordered NaphCare to supplement its motion for summary

16  judgment (ECF No. 252), which it did on February 16, 2021, (ECF No. 265).

17      Once NaphCare supplemented its motion, the present disputes erupted.  Sitton now

18  moves to strike NaphCare's expert's reports from its supplemental motion for summary

19  judgment.  (ECF No. 268).  NaphCare moves for leave to file a surreply to Sitton's reply

20  regarding that motion to strike.  (ECF No. 274).  Sitton moves to file his response to

21  NaphCare's supplemental motion for summary judgment under seal.  (ECF No. 278).

22  NaphCare moves to strike Sitton's response and to impose sanctions for violating the court's

23  protective order (ECF No. 216).  (ECF No. 281).

24  . . .

25  . . .

26  . . .

27  . . .

28  . . .

**James C. Mahan**
**U.S. District Judge**

## II.   LEGAL STANDARD

### a.   Summary judgment

Summary judgment is proper when the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."[1]  Fed. R. Civ. P. 56(a).  The purpose of summary judgment is "to isolate and dispose of factually unsupported claims or defenses," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986), and to avoid unnecessary trials on undisputed facts.  *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

When the moving party bears the burden of proof on a claim or defense, it must produce evidence "which would entitle it to a directed verdict if the evidence went uncontroverted at trial."  *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted).  In contrast, when the nonmoving party bears the burden of proof on a claim or defense, the moving party must "either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of [proof] at trial."  *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

If the moving party satisfies its initial burden, the burden then shifts to the party opposing summary judgment to establish a genuine issue of material fact.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  An issue is "genuine" if there is an adequate evidentiary basis on which a reasonable factfinder could find for the nonmoving party and a fact is "material" if it could affect the outcome under the governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

The opposing party does not have to conclusively establish an issue of material fact in its favor.  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.

---

[1] The court can consider information in an inadmissible form at summary judgment if the information itself would be admissible at trial.  *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (citing *Block v. City of Los Angeles*, 253 F.3d 410, 418–19 (9th Cir. 2001) ("To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56.")).

James C. Mahan
U.S. District Judge

- 3 -

1    1987).  But it must go beyond the pleadings and designate "specific facts" in the evidentiary

2    record that show "there is a genuine issue for trial."  *Celotex*, 477 U.S. at 324.  In other words,

3    the opposing party must show that a judge or jury has to resolve the parties' differing versions

4    of the truth.  *T.W. Elec. Serv.*, 809 F.2d at 630.

5           The court must view all facts and draw all inferences in the light most favorable to the

6    nonmoving party.  *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990); *Kaiser Cement*

7    *Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).  The court's role is not

8    to weigh the evidence but to determine whether a genuine dispute exists for trial.  *Anderson*,

9    477 U.S. at 249.  The evidence of the nonmovant is "to be believed, and all justifiable

10   inferences are to be drawn in his favor."  *Id.* at 255.  But if the evidence of the nonmoving

11   party is merely colorable or is not significantly probative, summary judgment may be granted.

12   *See id.* at 249–50.

13          b.  <u>Strike</u>

14          "It is well established that '[d]istrict courts have inherent power to control their

15   docket.' "  *Atchison, Topeka & Santa Fe Ry. v. Hercules, Inc.*, 146 F.3d 1071, 1074 (9th Cir.

16   1998) (alteration in original) (quoting *Hernandez v. City of El Monte*, 138 F.3d 393, 398 (9th

17   Cir. 1998)).  This includes the power to strike items from the docket as a sanction for litigation

18   conduct.  *See, e.g.*, *Lazy Y Ranch Ltd. v. Behrens,* 546 F.3d 580, 586–87, 588 (9th Cir. 2008)

19   (discussing, but declining to rule on, the ability of a district court to strike documents submitted

20   as exhibits to a motion); *Hambleton Bros. Lumber Co. v. Balkin Enters., Inc.*, 397 F.3d 1217,

21   1224–26 (9th Cir. 2005) (upholding a district court's grant of a motion to strike deposition

22   corrections and a declaration as a sanction when a party had violated FED. R. CIV. P. 30(e)); *cf.*

23   *Carrigan v. Cal. State Legislature,* 263 F.2d 560, 564 (9th Cir.1959) (discussing an appellate

24   court's inherent power to strike briefs and pleadings "as either scandalous, impertinent,

25   scurrilous, and/or without relevancy").

26   **III.    DISCUSSION**

27          First, to determine whether the court need review summary judgment on the merits, the

28   court addresses Sitton's motion to seal his response (ECF No. 278) and NaphCare's

James C. Mahan
U.S. District Judge

- 4 -

1  countermotion to strike that response (ECF No. 281).  Next, to determine what information the

2  court relies on in determining summary judgment, the court addresses Sitton's motion to strike

3  NaphCare's expert's report and testimony (ECF No. 268) and NaphCare's motion for leave to

4  file a surreply regarding that motion to strike (ECF No. 274).  Finally, the court turns to the

5  merits of NaphCare's motion for summary judgment and supplemental motion for summary

6  judgment.  (ECF Nos. 168, 265).

7      a.  Sitton's motion to file his response under seal (ECF No. 278) and NaphCare's
          motion to strike Sitton's response and impose sanctions (ECF No. 281)

8  Starting with NaphCare's motion to strike (ECF No. 281), NaphCare argues that this

9  court should impose case-dispositive sanctions on Sitton for violating the court's protective

10  order.

11  On April 5, 2021, the court held a hearing on Sitton's motion requesting direction from

12  the court regarding its protective order (ECF No. 258).  There, the court informed Sitton that

13  he could file his documents under seal without an accompanying motion to seal.  (ECF No.

14  273).  Sitton took that instruction to mean that his filings would automatically be sealed upon

15  his filing and filed a response to a different motion for summary judgment in this matter on

16  the public record.  (ECF No. 276).

17  When that response was not automatically sealed, Sitton took additional measures to

18  file this response under seal by filing a motion to seal and attaching his response to it.  (ECF

19  No. 278).  NaphCare now argues that this public filing constitutes a willful violation of the

20  court's protective order and justifies dismissing this case entirely.  (ECF No. 281).  The court

21  disagrees.

22  Sitton did not file the motion absent a motion to seal, nor did he forget to file under seal

23  or redact.  Sitton explicitly relayed to the court that he filed under an abundance of caution in

24  an effort to abide by the protective order.  This is not an inadvertent mistake, nor is it willful.

25  This is a pro se litigant's fundamental misunderstanding of, or inability to access, the court's

26

27

28

**James C. Mahan**
**U.S. District Judge**

1  electronic filing system.[2]  The court liberally construes Sitton's attempt to file under seal as

2  complying with the court's protective order.  Thus, the court does not impose case-dispositive

3  sanctions for Sitton's violation of the protective order.[3]

4          As to the response itself, the court GRANTS Sitton's motion to file the response under

5  seal.  (ECF No. 278).  Rather than strike, detach, or otherwise refile, the court instructs the

6  clerk to seal ECF No. 278 and designate it as Sitton's response to NaphCare's supplemental

7  motion for summary judgment at ECF No. 265.

8          b.  Sitton's motion to strike Dr. Fowlkes's reports (ECF No. 268) and NaphCare's
              motion for leave to file surreply (ECF No. 274)

9          Sitton argues that the court should strike the report and testimony of NaphCare's expert

10  witness, Dr. Fowlkes, because NaphCare violated the court's protective order (ECF No. 216)

11  and because Dr. Fowlkes is not qualified to offer expert opinions in this matter.  (ECF No.

12  268).

13          First, as to the protective order, Sitton ignores the spirit and purpose of the protective

14  order.  While Sitton argues that NaphCare's internal cataloging system reveals that Dr.

15  Fowlkes reviewed confidential information before signing his declaration under the protective

16  order, the court is not concerned with parties' sharing their own confidential information with

17  their own experts who were already disclosed and had already reviewed the information before

18  the protective order was issued.  Further, the court did not construct the protective order to

19  imbue the parties with veto power over their opponents' experts.

20          Regardless of when Dr. Fowlkes received the information and signed his declaration,

21  NaphCare's disclosure of its own produced discovery does not threaten the confidentiality of

22  the information contained therein—especially considering that Sitton attached nearly all that

23  confidential material to a public filing just after filing the present motion.  (ECF No. 278);

---

26  [2] Sitton describes in his motion requesting direction from the court (ECF No. 258) that the filing processes at his prison are complicated.  Further, Sitton has never filed any documents under seal in this matter; he may lack the ability to do so.

28  [3] This decision benefits NaphCare in that it allows the court to address the merits of this case.  *See Pagtalunan v. Galaza*, 291 F.3d 639, 643 (9th Cir. 2002) ("Public policy favors disposition of cases on the merits.").

*supra* Part III.A.  Accordingly, the court declines to impose sanctions against NaphCare.  (ECF No. 216 at 5 (providing that the court "may" issue sanctions for violating the protective order)).

Next, as to Sitton's evidentiary objections, Sitton argues that Dr. Fowlkes is not competent and that his report is unreliable and irrelevant.  (ECF No. 268).  Specifically, Sitton argues that Dr. Fowlkes is not competent in the field of orthopedic care and cannot testify as to the cause of Sitton's arthritis.  Further, Dr. Fowlkes's report is not reliable because it draws inferences solely from the record instead of independent medical processes, and Dr. Fowlkes improperly opines the legal conclusion that NaphCare was not deliberately indifferent.  (ECF No. 268 at 3–9).

Dr. Fowlkes's CV shows that he has extensive experience establishing his competency in the field of correctional healthcare.  Dr. Fowlkes is an emergency medicine specialist, addiction specialist, and correctional healthcare specialist who has testified as an expert in those fields on dozens of cases.  Thus, Dr. Fowlkes's original report properly opines on the standards of care given by NaphCare's medical employees, a field he is well versed in.

However, Dr. Fowlkes's supplemental report provides specific opinions regarding the presence and cause of Sitton's arthritis, a field Dr. Fowlkes does not claim to be an expert in.  Specifically, Dr. Fowlkes states as a matter of fact that Sitton's arthritis has been present for years and is not related to any specific trauma.  (ECF No. 265-3 ¶ 7).  While Dr. Fowlkes may have drawn this conclusion from Sitton's medical examinations on the record, the court cannot see how Dr. Fowlkes's is qualified to determine or rule out what caused Sitton's arthritis.  Thus, the court strikes paragraph seven[4] of Dr. Fowlkes's supplemental report.  (ECF No. 265-3 ¶ 7).

As to Sitton's relevance arguments, the court is not persuaded to strike Dr. Fowlkes's report.  As previously discussed, Dr. Fowlkes has substantial experience in the field of correctional healthcare.  To the extent that Dr. Fowlkes opines on the level of care NaphCare

---

[4] While other portions of Dr. Fowlkes's report comment upon Sitton's arthritis, those portions are based on Dr. Fowlkes's observations from the record.  Dr. Fowlkes's is qualified to testify upon his observations of a correctional healthcare provider's medical treatment.  Thus, the court does not strike any other portions of his report.

1    and its employees gave to Sitton, including whether that level of care amounts to what Dr.

2    Fowlkes's considers within the acceptable standard of care, he is permitted to testify as an

3    expert.

4            This relevance argument and Sitton's remaining arguments concerning Dr. Fowlkes's

5    "reliability" concern Dr. Fowlkes's credibility.  (*See e.g.*, ECF No. 268 at 4 ("[Dr. Fowlkes]

6    testified for the defense 70% of the time in "in custody" cases . . . . He makes more money as

7    an expert than . . . as a medical doctor.")).

8            Exclusion of expert testimony is proper only when such testimony is irrelevant or

9    unreliable because "[v]igorous cross-examination, presentation of contrary evidence, and

10   careful instruction on the burden of proof are the traditional and appropriate means of attacking

11   shaky but admissible evidence." *Daubert*, 509 U.S. at 596 (citing *Rock v. Arkansas*, 483 U.S.

12   44, 61 (1987).  Sitton's remaining concerns are thus best addressed by the trier of fact during

13   trial, not the court during a motion to strike.  Accordingly, the court will not strike the

14   remaining portions of Dr. Fowlkes's report and supplemental report.

15           Finally, the court will not entertain Sitton's entirely speculative allegation that

16   NaphCare engaged in fraud and deceit in providing the court with Dr. Fowlkes's report and

17   declaration.  (*See* ECF No. 272).  Thus, the court DENIES NaphCare's motion for leave to file

18   a surreply as it is unnecessary.  (ECF No. 274).

19           c.   NaphCare's motions for summary judgment (ECF Nos. 168, 265)

20           As an initial matter, instead of replying to Sitton's response (ECF No. 278), NaphCare

21   moved for sanctions regarding Sitton's improper filing.  (*See* ECF Nos. 281, 283; *supra* Part

22   III.A).  The time to reply to Sitton's response has long passed and NaphCare never moved to

23   extend the reply deadline.  Thus, the court reads NaphCare's supplemental motion (ECF No.

24   265) and Sitton's response (ECF No. 278) without a reply.

25           Sitton's claim against NaphCare contains two main allegations of Fourteenth

26   Amendment due process violations.  (ECF No. 13, 14).  First, Sitton alleges that NaphCare

27   operated under a standard practice of delaying medical care until it was absolutely necessary

28   so NaphCare could avoid the costs of treatment.  Second, Sitton alleges that NaphCare imposed

James C. Mahan
U.S. District Judge

- 8 -

1    a policy regarding medical co-pays which forced Sitton to choose between receiving medical

2    care and buying food at the prison's commissary.

3         Sitton brings his claim under 42 U.S.C. § 1983 ("Section 1983"), which "provides a

4    remedy to individuals whose constitutional rights have been violated by persons acting under

5    color of state law." *Caballero v. Concord*, 956 F.2d 204, 206 (9th Cir. 1992). Thus, to prevail

6    on his claim under Section 1983, Sitton must show that 1) NaphCare acted under color of state

7    law while committing the conduct at issue, and 2) the conduct deprived Sitton of some right,

8    privilege, or immunity protected by the Constitution or laws of the United States. 42 U.S.C. §

9    1983; *Shah v. City of Los Angeles*, 797 F.2d 743, 746 (9th Cir. 1986).

10         NaphCare does not dispute that it acted under color of state law while providing medical

11   treatment to prisoners and pretrial detainees at CCDC. As a private entity contracted with a

12   state prison, NaphCare acted as a municipality, not as an individual. *See Tsao v. Desert Palace,

13   Inc.*, 698 F.3d 1128, 1138-39 (9th Cir. 2012). Thus, the court's analysis focuses on whether

14   NaphCare deprived Sitton of a constitutional right and, if it did, whether NaphCare is liable

15   for that deprivation as a municipality. *See Monell v. Dep't of Social Services*, 436 U.S. 658,

16   698 (1978).

17         To prevail on his *Monell* claim, Sitton must show 1) he was deprived of a constitutional

18   right; 2) NaphCare had a policy or custom; 3) the policy or custom amounted to deliberate

19   indifference to Sitton's constitutional right; and 4) the policy or custom was the moving force

20   behind the constitutional violation. *See Mabe v. San Bernardino Cnty.*, 237 F.3d 1101, 1110–

21   11 (9th Cir. 2001).

22         The Ninth Circuit has held that a plaintiff can establish a municipal policy by

23   demonstrating one of the following:

24         (1) the constitutional tort was the result of a longstanding practice or custom
           which constitutes the standard operating procedure of the local government
25         entity; (2) the tortfeasor was an official whose acts fairly represent official
           policy such that the challenged action constituted official policy; or (3) an
26         official with final policy-making authority delegated that authority to, or ratified
           the decision of, a subordinate.

27         *Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008) (quotation marks and citations

28   omitted).

**James C. Mahan**
**U.S. District Judge**

A plaintiff may also prove a *de facto* municipal policy or custom existed but cannot prove it based only on random acts or isolated events. *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1444 (9th Cir. 1989). Rather, there must be a "widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988); *Nadell v. Las Vegas Metro. Police Dept.*, 268 F.3d 924, 929 (9th Cir. 2001).

Here, Sitton alleges he was deprived of his due process right under the Fourteenth Amendment to be free from the cruel and unusual punishment of denied and delayed medical care under an Eighth Amendment framework. As the court previously discussed in its screening order:

> A pretrial detainee's right to be free from punishment is grounded in the Due Process Clause, but courts borrow from Eighth Amendment jurisprudence when analyzing the rights of pretrial detainees. *See Pierce v. Cnty. of Orange*, 526 F.3d 1190, 1205 (9th Cir. 2008). . . .
>
> The Eighth Amendment prohibits the imposition of cruel and unusual punishment and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency.' " *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). A prison official violates the Eighth Amendment when he acts with "deliberate indifference" to the serious medical needs of an inmate. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). "To establish an Eighth Amendment violation, a plaintiff must satisfy both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012).

(ECF No. 14 at 16).

"Denial of medical attention to prisoners constitutes an [E]ighth [A]mendment violation if the denial amounts to deliberate indifference to serious medical needs of the prisoners." *Toussaint v. McCarthy*, 801 F.2d 1080, 1111 (9th Cir. 1986) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002).

Delay of, or interference with, medical treatment can also amount to deliberate indifference. *See Jett*, 439 F.3d at 1096; *Hallett*, 296 F.3d at 744. Where the prisoner is alleging that delay of medical treatment evinces deliberate indifference, however, the prisoner

James C. Mahan
U.S. District Judge

1   must show that the delay led to further injury.  *See Hallett*, 296 F.3d at 745–46; *Shapley v.*
2   *Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (per curiam).

3   Charging prisoners fees for medical services does not violate the Eighth Amendment
4   unless it prevents prisoners from receiving medical care.  *See Shapley v. Nev. Bd. of State*
5   *Prison Comm'rs*, 766 F.2d 404, 408 (9th Cir. 1985) (per curiam).

6   It is not sufficient for a plaintiff to identify a custom or policy, attributable to the
7   municipality, that caused his injury.  A plaintiff must also demonstrate that the custom or
8   policy was adhered to with "deliberate indifference to the constitutional rights of [the jail's]
9   inhabitants." *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1076 (9th Cir. 2016) (quoting *City*
10  *of Canton*, 489 U.S. at 392).

11  Here, even assuming, *arguendo*, that Sitton's treatment constitutes a deprivation of due
12  process under the objective prong of an Eighth Amendment analysis (*see* ECF No. 278), he
13  still fails to establish a claim against NaphCare under a theory of municipal liability.

14  *1.  Sitton fails to show NaphCare had a policy to delay and deny treatment*

15  Sitton supports his argument that NaphCare had a policy to delay medical treatment by
16  citing to a deposition taken in another case where a NaphCare doctor described that his requests
17  for additional care were often denied.  (ECF No. 278 at 28).  Specifically, the doctor explained
18  that he would occasionally recommend a treatment that he felt was "necessary to [sic] good
19  healthcare for that patient" that ended up being denied.  (ECF No. 278-1 at 101).

20  Sitton argues that NaphCare's doctor's deposition, coupled with NaphCare's publicly
21  stated "core value" to provide "high-quality care, personalized support, and cost-saving
22  solutions while always meeting or exceeding constitutional standards" is enough for a
23  reasonable juror to infer deliberate indifference from NaphCare.  (ECF Nos. 278 at 28; 278-1
24  at 99).

25  Even drawing all reasonable inferences in favor of Sitton, that evidence is insufficient
26  to establish that a NaphCare policy constituted deliberate indifference.  In the same deposition,
27  NaphCare's doctor stated that he was never prevented from ordering what he considered

28

James C. Mahan
U.S. District Judge

1    medically necessary treatment and would send a patient to the emergency room if there was

2    something he felt was medically necessary.  (ECF No. 278-1 at 101).

3         Further, Sitton fails to provide any evidence supporting an inference that NaphCare's

4    alleged policy resulted in the denial of Sitton's medical treatment as recommended by Dr.

5    Zinser.  Sitton instead complains that NaphCare's employees did not provide the treatment he

6    personally requested, referring mainly to his own medical "kites"—his inmate grievances

7    submitted to medical personnel at CCDC—where he complains of his knee pain and demands

8    better treatment from NaphCare's employees.

9         Through these grievances, Sitton consistently requested pain medication and

10   complained of the lack of effectiveness from the current treatments.  His grievances were all

11   met with comments from staff, sometimes informing him that he is scheduled to meet with a

12   doctor for treatment review and sometimes informing him that his treatment will or will not be

13   changed based on his complaints.

14        Sitton's grievances span over a year.  During that time, NaphCare employees modified

15   Sitton's medication several times, never quite matching the dosage and frequency Dr. Zinser

16   prescribed for Sitton's pain before resigning in 2015.  However, also during this time, Sitton

17   obtained X-rays and diagnosis regarding his arthritis.  The record thus shows that the medical

18   staff was actively treating Sitton according to their own views of his medical needs.

19        Instead of bringing this action against any of the NaphCare employees who allegedly

20   gave Sitton inadequate treatment, Sitton sues NaphCare as a municipality.  Yet, Sitton fails to

21   establish that NaphCare had a policy in place to delay treatment.  NaphCare cannot be liable

22   for the independent decisions of its medical personnel absent some proof of a policy which

23   controlled the employees' actions.

24        Even if NaphCare could be liable for its employees differing opinions, Sitton would

25   have to show that the course of treatment NaphCare's doctors chose was medically

26   unacceptable under the circumstances and that the doctors chose this course in conscious

27   disregard of an excessive risk to Sitton's health.  Here, Sitton fails to provide evidence to

28   establish either requirement.

**James C. Mahan**
**U.S. District Judge**

1    The course of treatment the doctors chose was similar to Dr. Zinser's, albeit less
2  frequent and intense.  While the doctors may have taken this course of action in conscious
3  disregard of Sitton's arthritis, Sitton provides no evidence that this treatment was medically
4  unacceptable.  In fact, Sitton's care at the Ely State Prison, where he was transferred after his
5  time at CCDC, increased only to the point where he received anti-inflammatory injections as
6  well as medication.  No specialist surgery or NaphCare-denied accommodations were ordered
7  and Sitton provides no testimony or evidence that the pain medication he was on was medically
8  unacceptable.  Thus, Sitton's deliberate indifference claim fails as a matter of law under a
9  theory of difference in medical opinion.

10    Sitton also argues that NaphCare's policy is evidenced by Dr. Zinser's resigning in
11  2015.  (ECF No. 278 at 28).  Sitton supports his argument by citing to his own deposition,
12  where he speculated that Dr. Zinser was going to do more tests but ended up quitting
13  NaphCare.  (*Id.*).  Yet, Sitton's attached exhibit, purportedly Dr. Zinser's resignation letter,
14  states simply "This is my official resignation notice."  (ECF No. 278-2 at 6).  This notice,
15  absent any testimony from Dr. Zinser, is insufficient for any reasonable juror to draw an
16  inference of Dr. Zinser resigning over NaphCare's alleged policy.

17    Finally, and crucially, Sitton provides no evidence to support a finding that NaphCare's
18  alleged deliberate indifference led to further injury.  Arthritis is a degenerative condition that
19  naturally worsens with time.  Considering that Sitton's only prescribed remedy at any point
20  under any doctor was pain and anti-inflamatory medication, Sitton fails to establish that his
21  arthritis worsened because of NaphCare's alleged policy to delay and deny treatment.

22    Without some evidence that NaphCare overrode the recommendation of a doctor in
23  spite of medical evidence, Sitton simply fails to establish any genuine question of material fact
24  as to whether NaphCare had a policy to delay or deny treatment, enforced this policy, or that
25  the policy caused Sitton further injury.  Accordingly, Sitton's claim that NaphCare had a policy
26  to delay medical treatment in deliberate indifference to his medical needs does not survive
27  summary judgment.

28  . . .

James C. Mahan
U.S. District Judge

- 13 -

### 2. *Sitton fails to show that NaphCare had a policy to impose co-pays to dissuade inmates from seeking medical treatment*

As to Sitton's claim regarding NaphCare's alleged co-pay policy, Sitton fails to establish that NaphCare had any such policy.  Sitton points to two sections of NaphCare's policy book that reference payments to establish that NaphCare did have some policy regarding co-pays.  However, both of those sections explicitly state that co-pays shall not be a barrier for care and that a payment will not be charged under certain circumstances.  Sitton points to no policy from NaphCare where co-pays are required.

Sitton does provide evidence that he was charged for some of his medical visits.  (ECF No. 13 at 56–92).  The co-pay fee Sitton complains of is a $3.00 charge that NaphCare charged Sitton on several occasions between 2015 and 2016.  However, no reasonable inference can be drawn to establish that these charges deprived Sitton of medical treatment.

After extensive discovery, Sitton's entire claim for excessive co-pays relies on his own self-serving deposition, which itself relies on hearsay from unknown declarants, and a scribbled notice of termination from his previous physician.  Sitton provides no documents, testimony from inmates or medical staff, or any scintilla of evidence that NaphCare propagated a policy to charge excessive co-pays that prevented Sitton from receiving medical treatment.

At most, the co-pay is a minor charge for a visit with the medical staff.  However, the record shows that the charges were waived or reimbursed on nearly every occasion upon Sitton's request.  (*See* ECF Nos. 278-1 at 139–142, 278-2 at 1–4).  Thus, Sitton's claim that the co-pay constituted a policy fails as a matter of law.

Accordingly, even viewing all facts and drawing all reasonable inferences in Sitton's favor, no reasonable juror could find in favor of Sitton's claims that NaphCare had a policy to purposefully impose co-pays that was deliberately indifferent to Sitton's care or prevented him from receiving care.  Therefore, Sitton's claim fails as a matter of law.[5]

. . .

---

[5] Due to these crucial failures, Sitton fails to establish a claim under either the *Gordon* or *Castro* standard.  A *Monell* claim cannot survive summary judgment absent some scintilla of evidence that a policy existed, *defacto* or otherwise.

James C. Mahan
U.S. District Judge

- 14 -

**IV.    CONCLUSION**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that NaphCare's motion for summary judgment and supplemental motion for summary judgment (ECF No. 168, 265) be, and the same hereby are, GRANTED.

IT IS FURTHER ORDERED that Sitton's motion to strike exhibits (ECF No. 268) is GRANTED in part and DENIED in part.  Paragraph seven of Dr. Fowlkes's supplemental report (ECF No. 265-3 ¶ 7) is stricken.

IT IS FURTHER ORDERED that NaphCare's motion for leave to file a surreply (ECF No. 274) is DENIED.

IT IS FURTHER ORDERED that Sitton's motion for leave to file under seal (ECF No. 278) is GRANTED.  The clerk is instructed to file ECF No. 278 under seal and redesignate it as a response to NaphCare's supplemental motion for summary judgment (ECF No. 265).

IT IS FURTHER ORDERED that NaphCare's countermotion to strike and impose sanctions (ECF No. 281) is DENIED.

The clerk is instructed to enter judgment in favor of NaphCare.

DATED November 18, 2021.

_____
UNITED STATES DISTRICT JUDGE

James C. Mahan
U.S. District Judge

- 15 -