1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

WILL SITTON,

Plaintiff(s),

v.

LVMPD, et al.,

Defendant(s).

Case No. 2:17-CV-111 JCM (VCF)

ORDER

Presently before the court is defendants Herbert Baker, Franc Cadet, Trevor Neville, Andrew Saavedra, Kelly Camp, Marquis Hines, Gregory Mashore, Manuel Gardea, Samuel Mendoza, Theodoros Snowden, and John Storey's (collectively, "defendants") motion for summary judgment and supplemental motion for summary judgment.  (ECF Nos. 166, 262). Plaintiff Will Sitton ("plaintiff") responded in opposition (ECF No. 276), to which defendants replied (ECF No. 279).

Also before the court is plaintiff's motion for leave to file a surreply to defendants' reply.  (ECF No. 280).  Defendants did not respond, and the time to do so has passed.

I.    **BACKGROUND**

This matter concerns plaintiff's treatment and the conditions of confinement during plaintiff's time as a pretrial detainee in the Clark County Detention Center ("CCDC").

In 2009, plaintiff arrived in the custody of CCDC pending his criminal trial in the Eighth Judicial District Court of Nevada.  In 2017, after years of filing grievances through CCDC's official channels, plaintiff brought this action against defendants alleging, *inter alia*, that defendants violated plaintiff's due process rights.  (ECF No. 13).

James C. Mahan
U.S. District Judge

After the court's screening and defendants' motion to dismiss, the court dismissed all but three of plaintiff's claims against defendants. (*See* ECF Nos. 12, 24, 83, 108, 114, 122, 133, 150). Claim one alleges 1) a due process violation by defendants Baker, Cadet, Neville, Saavedra, Camp, Mashore, and Gardea for improperly classifying plaintiff as a max status inmate, 2) a due process violation by Doe defendants for the cumulative conditions of plaintiff's confinement, and 3) excessive force by defendant Gardea for abusively applying and removing plaintiff's handcuffs.[1] Claim five alleges a due process violation from defendant Storey for improperly withholding plaintiff's magazine subscription. Claim seven alleges excessive force by defendants Hines and Snowden for striking plaintiff while he was restrained.

Defendants now move for summary judgment on plaintiff's remaining claims. (ECF No. 262).

## II.   LEGAL STANDARD

Summary judgment is proper when the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."[2] Fed. R. Civ. P. 56(a). The purpose of summary judgment is "to isolate and dispose of factually unsupported claims or defenses," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986), and to avoid unnecessary trials on undisputed facts. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

When the moving party bears the burden of proof on a claim or defense, it must produce evidence "which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000)

---

[1] Plaintiff failed to properly serve former defendants Sands and Dumer, resulting in their dismissal as defendants. Accordingly, plaintiff's due process claim against Sands and Dumer for denial of a hearing and witnesses is dismissed. (*See* ECF Nos. 70, 150).

[2] The court can consider information in an inadmissible form at summary judgment if the information itself would be admissible at trial. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (citing *Block v. City of Los Angeles*, 253 F.3d 410, 418–19 (9th Cir. 2001) ("To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56.")).

(internal citations omitted).  In contrast, when the nonmoving party bears the burden of proof on a claim or defense, the moving party must "either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of [proof] at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

If the moving party satisfies its initial burden, the burden then shifts to the party opposing summary judgment to establish a genuine issue of material fact.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  An issue is "genuine" if there is an adequate evidentiary basis on which a reasonable factfinder could find for the nonmoving party and a fact is "material" if it could affect the outcome under the governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

The opposing party does not have to conclusively establish an issue of material fact in its favor.  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  But it must go beyond the pleadings and designate "specific facts" in the evidentiary record that show "there is a genuine issue for trial."  *Celotex*, 477 U.S. at 324.  In other words, the opposing party must show that a judge or jury has to resolve the parties' differing versions of the truth.  *T.W. Elec. Serv.*, 809 F.2d at 630.

The court must view all facts and draw all inferences in the light most favorable to the nonmoving party.  *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990); *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).  The court's role is not to weigh the evidence but to determine whether a genuine dispute exists for trial.  *Anderson*, 477 U.S. at 249.  The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor."  *Id.* at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

. . .

. . .

. . .

James C. Mahan
U.S. District Judge

- 3 -

1   **III.    DISCUSSION**

2           A.  <u>Defendants' request for sanctions and plaintiff's motion for surreply</u>

3           As an initial matter, the court GRANTS plaintiff's motion to file a surreply.  (ECF No.

4   280).  Defendants' reply raised the entirely new issue of requesting sanctions.  (ECF No. 279).

5   The court required additional information to rule on that request, which plaintiff provided in

6   his proposed surreply.  (ECF No. 280).

7           Pursuant to the court's protective order (ECF No. 216), plaintiff was not allowed to

8   share confidential information with other inmates, even those who assisted plaintiff in drafting

9   his court filings.  Defendants allege that plaintiff must have shared confidential information

10  with a fellow inmate because plaintiff's response (ECF No. 276) is written by someone other

11  than plaintiff.  (ECF No. 279 at 4–5).

12          In response, plaintiff outlines the "painstaking" process he utilized to avoid violating

13  the court's order.  (ECF No. 280).  Plaintiff's response contains several blank spaces left by

14  the drafter for plaintiff to fill in with specific information and citations to defendants' protected

15  materials.  (*See e.g.*, ECF No. 276 at 9 ("[O]nce you write <u>any</u> text you thought helpful, I

16  cannot see it.").  Some of those spaces remain blank after plaintiff's review, indicating that the

17  drafter truly did not know whether plaintiff had confidential information relevant to any given

18  section.  (*See e.g.*, *id.* at 5).

19          The court is persuaded by plaintiff's explanation and will not impose defendants'

20  requested sanctions.  However, the clerk is instructed to file plaintiff's response (ECF No. 276)

21  under seal, as it may contain confidential information protected by the court's order (ECF No.

22  216).[3]

23  . . .

24  . . .

25  . . .

26  . . .

27  ───────────────────

28          [3] The court instructed plaintiff to file his response under seal without an accompanying
    motion to seal.  (ECF No. 273).  Plaintiff mistakenly took that to mean that his response would
    automatically be sealed upon filing.

**James C. Mahan**
**U.S. District Judge**                                          - 4 -

1

   b. <u>Claim one: due process and excessive force</u>

2

   Three[4] causes of action lie within plaintiff's first claim.  First, a due process violation

3

against all defendants for punishing plaintiff with maximum confinement status.  Second, a

4

due process violation against Doe defendants for punishing plaintiff with the cumulative

5

conditions of his confinement.  Third, excessive force against defendant Gardea for abusively

6

applying and removing plaintiff's handcuffs.

7

   "[P]retrial detainees . . . possess greater constitutional rights than prisoners."  *Stone v.*

8

*City of San Francisco*, 968 F.2d 850, 857 n.10 (9th Cir. 1992); *see also Mendiola-Martinez v.*

9

*Arpaio*, 836 F.3d 1239, 1246 n.5 (9th Cir. 2016) ("Eighth Amendment protections apply only

10

once a prisoner has been convicted of a crime, while pretrial detainees are entitled to the

11

potentially more expansive protections of the Due Process Clause of the Fourteenth

12

Amendment.").

13

   "[T]he Due Process Clause protects a pretrial detainee from the use of excessive force

14

that amounts to punishment."  *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015) (citation

15

and internal quotation marks omitted).  Unless there is evidence of intent to punish, then those

16

conditions or restrictions that are reasonably related to legitimate penological objectives do

17

not violate pretrial detainees' right to be free from punishment.  *See Block v. Rutherford*, 468

18

U.S. 576, 584 (1984) (citing *Bell v. Wolfish*, 441 U.S. 520, 538–39 (1979)).

19

   "[P]unishment" does not mean that proof of intent (or motive) to punish is

20

required for a pretrial detainee to prevail on a claim that his due process rights were violated.  Rather, . . . a pretrial detainee can prevail by providing only objective evidence that the challenged governmental action is not rationally

21

related to a legitimate governmental objective or that it is excessive in relation to that purpose.

22

*Kingsley*, 576 U.S. at 398.  Accordingly, "the appropriate standard for a pretrial

23

detainee's excessive force claim is solely an objective one."  *Id.* at 397.

24

   "For a particular governmental action to constitute punishment, (1) that action must

25

cause the detainee to suffer some harm or disability, and (2) the purpose of the governmental

26

27

   [4] While the parties discuss plaintiff's due process claim against defendants Sands and Dumer, those defendants have been dismissed from this matter.  (*See* ECF Nos. 70, 150).  Accordingly, plaintiff's due process claim against Sands and Dumer regarding his August 2015, hearing is dismissed.

28

**James C. Mahan**
**U.S. District Judge**

- 5 -

1    action must be to punish the detainee." *Demery v. Arpaio*, 378 F.3d 1020, 1029 (9th Cir.

2    2004).  Further, "to constitute punishment, the harm or disability caused by the government's

3    action must either significantly exceed, or be independent of, the inherent discomforts of

4    confinement." *Id.* at 1030.

             i.   *Due process violation for maximum confinement status against Baker,*
5                 *Cadet, Neville, Saavedra, Camp, Mashore, and Gardea*

6         Plaintiff first argues that he was wrongly classified as a max status inmate and subjected

7    to maximum levels of confinement as a form of punishment by CCDC officers.  Plaintiff

8    further argues that he was punished when defendants kept him in maximum confinement

9    longer than was necessary and denied his repeated requests to leave maximum confinement

10   despite his meeting all the criteria.

11        Defendants argue that plaintiff's max status classification resulted from plaintiff's

12   lengthy infraction record at the CCDC, including noncompliance, threats to officers,

13   organizing fights between inmates, and possessing weapons.  (ECF No. 262 at 9–10).

14        The record establishes that plaintiff's claim falls short of establishing a due process

15   violation.  Plaintiff's incident record goes back to July 2010, when plaintiff was originally

16   placed in max custody in after several incidents of bad behavior including hiding razor blades,

17   getting in fights, and threatening officers.  (ECF Nos. 262-3, 262-4).  Plaintiff's extensive

18   incident report continues well into the time the present grievances are centered and shows a

19   consistent pattern of aggressive and disruptive behavior, violations of prison rules, and threats

20   to officers and medical staff.[5]  (*See* ECF No. 262-4).

21        While plaintiff disputes the legitimacy of his classification, there is no genuine dispute

22   as to his conduct while in custody.  Thus, no genuine dispute exists as to whether plaintiff was

23   properly kept as a max status during his time at CCDC.  Accordingly, plaintiff's due process

24   claim for his max status classification fails as a matter of law.

25

26

27        [5] As is plaintiff's contention that the reports were falsified to punish him.  The
     consistency in occurrence and breadth in violative conduct detailed in the incident reports
28   pushes plaintiff's claim that the max confinement was purely to punish him beyond the point
     that the court could reasonably draw that inference in plaintiff's favor.

**James C. Mahan**
**U.S. District Judge**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ii. *Due process violation for the cumulative conditions of plaintiff's confinement against Doe defendants*

Plaintiff next argues that his conditions of confinement were unconstitutional. Specifically, plaintiff argues that his shower did not have hot water between April 2015, and June 2015, his cell blew only cold air between December 2015, and March 2016, his cell did not have hot water between June 2015, and March 2016, and he received inadequate amounts of food between April 2015, and at least September 2015.

As to plaintiff's claims about cold water in the showers and cold water in his cell, plaintiff fails to provide any evidence other than his self-serving declarations that officers purposefully kept the water cold to punish plaintiff. Plaintiff claims that his pleas for hot water were ignored, but his grievances establish that defendants made consistent, albeit slow, progress in fixing the hot water issue. (*See* ECF No. 276-1 at 14–17).

For example, plaintiff's April 11, 2015, complaint alleged that there was no hot water for three days and was met with a comment that a work order would be submitted. (*Id.* at 14). Six days later, on April 17, 2015, plaintiff's next complaint again alleged that there was no hot water for the past three days but was met this time with a comment that CCDC was working on the problem. (*Id.* at 15). Plaintiff's next two complaints admitted that the water situation was getting better but was progressing slower and less effectively than plaintiff demanded. (*Id.* at 16–17).

These grievances, and plaintiff's remaining grievances regarding the water, were consistently met with comments relaying that CCDC was working on the problem and would continue to work at it until the problem is resolved. Those comments and the eventual resolution of the hot water issue show that officers were not purposefully allowing cold water to punish plaintiff. The court need not draw unjustifiable inferences in favor of plaintiff. Thus, plaintiff's due process claim is not supported by his allegations of cold water.

As to plaintiff's claim about the cold air coming from his vents, his claims fail at the onset because he cannot prove that the air was cold to punish him. Plaintiff's first grievance filed about the cold air problem specifically provides that plaintiff heard a maintenance worker attempting to locate the problem with the cold air before plaintiff complained of it. (*Id.* at 44).

James C. Mahan
U.S. District Judge

- 7 -

1    Plaintiff's next grievance about the air, dated three months later, shows that plaintiff wrote

2    from a new housing unit and floor from the previous grievance.  (*Id.* at 46).  Lack of hot air in

3    separate parts of the prison, which CCDC was actively working to remedy, does not constitute

4    punishment.  Thus, plaintiff's due process claim is not supported by his allegations of cold air.

5         As to plaintiff's claims of inadequate nutrition, plaintiff does establish some disputes

6    of fact regarding his weight loss but establishes neither genuine nor material issues of fact

7    regarding whether it constituted punishment.  Contrarily, defendants show that plaintiff has

8    insufficient evidence to prove there was inadequate food given as a form of punishment.

9         Plaintiff alleges that he lost weight between his incarceration in 2009, and September

10   2015.  Plaintiff bases this allegation on several grievances he submitted regarding his weight

11   loss beginning in April 2015.  (*Id.* at 22, 24, 26, 37).  Yet, plaintiff's grievances are

12   inconsistent,[6] claiming different levels of weight loss beginning as early as January 2015, and

13   as late as April 2015.

14        While plaintiff claims that he was at a "healthy" weight of 275 pounds for his "athletic"

15   six-foot-one-inch frame, medical standards disagree.  The U.S. Department of Health and

16   Human Services ("USDHHS") provides that a healthy BMI is between 18.5 and 24.9.  A

17   healthy weight for a six-foot-one-inch-tall man is thus between 140 and 189 pounds.  Plaintiff's

18   weight loss, even if it did occur as rapidly as he alleges, thus brought him closer to what the

19   USDHHS has detailed as a healthy weight, not what plaintiff claims is a malnourished state.

20        Further, plaintiff provides no medical evidence that he suffered from malnutrition other

21   than what he alleges was a steady, several month-long weight loss.  Plaintiff provides no

22   records of his weight in 2015, no medical reports or evaluations describing him as

23   malnourished, and no similar complaints from other inmates receiving the same amount of

24   _____

25        [6] In his grievance dated July 11, 2015, he complained that he maintained a steady
     weight of 245 pounds between 2009 and 2015, but lost 30 pounds between April 2015, and
26   July 2015.  (ECF No. 276-1 at 22).  Just five days later, plaintiff complained that he lost nearly
     40 pounds in two months and nearly 75 pounds in six months.  (ECF No. 276-1 at 24).  Then,
27   on September 23, 2015, plaintiff complained that he dropped from 250 pounds to 205 pounds
     over the past four months.  (ECF No. 276-1 at 26).  Further, Plaintiff's medical history shows
28   that plaintiff weighed 238 pounds when he was seen at UMC for an unrelated issue in July
     2014.  (ECF No. 276-2 at 34).

**James C. Mahan**
**U.S. District Judge**

- 8 -

1  food during that time.  Plaintiff's sole support is that he lost weight and eventually received
2  nighttime snacks due to his consistent complaining about hunger.  As plaintiff fails to provide
3  sufficient evidence to prevail on his claim, his due process claim is not supported by his
4  allegations of inadequate nutrition.

5  Accordingly, plaintiff's due process claim for the cumulative conditions of his
6  confinement fails as a matter of law.

7  iii.  *Excessive force for abusive handcuffing against Gardea*

8  Plaintiff argues that defendant Gardea used excessive force to punish plaintiff for
9  complaining about the lack of proper medical care plaintiff was receiving and complaining
10  about plaintiff's loss of free time for that complaint.  According to plaintiff, Gardea clamped
11  down on plaintiff's wrists twice and dragged the handcuffs up and down plaintiff's arms to
12  cause plaintiff pain.

13  In *Kingsley*, the Supreme Court held that a pretrial detainee states a claim for excessive
14  force under the Fourteenth Amendment if: (1) the defendant's use of force was used purposely
15  or knowingly, and (2) the force purposely or knowingly used against the pretrial detainee was
16  objectively unreasonable.  *Id.* at 2472–73.

17  "Determining whether the force used to effect a particular seizure is 'reasonable' under
18  the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion
19  on the individual's Fourth Amendment interests' against the countervailing governmental
20  interests at stake."  *Graham v. Connor*, 490 U.S. 386, 396 (1989) (quoting *Tennessee v.*
21  *Garner*, 471 U.S. 1, 8 (1985)).  In making this determination, the court considers the
22  relationship between the need of force and the amount of force used, the extent of plaintiff's
23  injury, any effort made to temper or limit the amount of force used, the severity of the security
24  problem at issue, the threat reasonably perceived by the officer, and whether the plaintiff was
25  actively resisting.  *Kingsley*, 135 S. Ct. at 2472 (citing *Graham*, 490 U.S. at 396).  Here, there
26  are genuine disputes of fact regarding whether defendant Gardea's use of force in retraining
27  and removing plaintiff's restraints in his cell on August 18, 2015, was objectively
28  unreasonable.

James C. Mahan
U.S. District Judge

1    Defendants argue that the August 18, 2015, incident report shows that plaintiff yelled

2    at a nurse and threatened Gardea, resulting in Gardea's first application of force to secure

3    plaintiff after his shower.  Defendants further argue that when Gardea escorted plaintiff to his

4    cell, plaintiff angrily and violently pulled his hands away into his cell, smashing Gardea's

5    hands against the food port and causing a laceration.  (ECF No. 262-4 at 4–5).  According to

6    defendants, this aggressive conduct prompted Gardea's use of force to remove plaintiff's

7    handcuffs while plaintiff was in his cell.

8    Plaintiff argues that he did not yell at the nurse but passively objected to Gardea's

9    ignoring CCDC's policies for dispensing medication along with a cup of water.  Further,

10   plaintiff argues that he complied with all of Gardea's instructions while in his cell and even

11   helped retrieve a key that Gardea dropped inside of the cell.  After this incident, plaintiff

12   complained of pain and received medical attention, where medical personnel confirmed that

13   plaintiff had a previous wrist injury where Gardea allegedly inflicted further injury.

14   Defendants do not dispute that Gardea used some level of force while handling

15   plaintiff's handcuffs.  While some force may have been called for, the parties' contradicting

16   versions of events portray scenarios that call for different levels of force.  Further, while

17   plaintiff's injuries are not severe, that alone is not enough to preclude a finding that Gardea

18   used excessive force.  *See Wilkins v. Gaddy*, 559 U.S. 34, 36–38 (2010) ("An inmate who is

19   gratuitously beaten by guards does not lose his ability to pursue an excessive force claim

20   merely because he has the good fortune to escape without serious injury.").

21   Assuming all factors in favor of plaintiff, Gardea's clamping down on plaintiff's

22   handcuffs for passively objecting to improper medical treatment, then yanking around

23   plaintiff's handcuffs to the point of injury while plaintiff was fully restrained inside of his cell

24   may constitute excessive force.  Thus, the parties' genuine factual dispute is material.

25   Accordingly, plaintiff's claim of excessive force by defendant Gardea survives

26   summary judgment.

27   . . .

28   . . .

**James C. Mahan**
**U.S. District Judge**

1      c.  <u>Claim five, due process and mail interference against Storey</u>

2     Plaintiff argues that his due process rights were violated when CCDC withheld

3   plaintiff's copy of ESPN's 2015 "body issue" and allowed the same employee—defendant

4   Storey—to review both of plaintiff's appeals to that withholding.

5     Plaintiff first argues that his magazine was wrongfully withheld.  Plaintiff does not

6   dispute the legitimacy of CCDC's nudity ban itself but instead argues that Storey "arbitrarily

7   imposed an extreme and puritanical interpretation of "nudity" to mean any exposed skin, rather

8   than CCDC's own definition . . . ."  (ECF No. 276 at 24).  Plaintiff is mistaken.

9     CCDC's no-nudity policy for incoming mail prohibits "[n]ude, partially nude, or

10  sexually explicit photographs exposing genitalia, breasts, <u>buttocks</u>, or any sexual act."  (ECF

11  No. 262-5 at 15) (emphasis added).  A cursory review of ESPN's 2015 body issue reveals

12  many pictures of fully exposed buttocks.  Thus, the withholding of plaintiff's subscription

13  magazine complied with CCDC's nudity ban.

14    Plaintiff next argues that defendants violated his due process right to two-level appeal

15  established in *Krug v. Lutz*, 329 F.3d 692 (9th Cir. 2003).  (ECF No. 276 at 25).  The Ninth

16  Circuit in *Krug* held that "the right to appeal the exclusion of incoming publications to a prison

17  official <u>other than the one who made the initial exclusion decision</u>" is a necessary due process

18  safeguard to a prison's control over inmates' incoming publications.  *Krug*, 329 F.3d at 698

19  (citing *Procunier v. Martinez*, 416 U.S. 396, 418–19, (1974), *overruled on other grounds by*

20  *Thornburgh v. Abbott*, 490 U.S. 401 (1989)) (emphasis added).

21    Here, the record shows that a CCDC employee withheld the ESPN magazine from

22  plaintiff based on CCDC's nudity ban.  (ECF No. 276-1 at 50–51).  When plaintiff appealed

23  that withholding, a different employee—purportedly Storey—upheld the withholding.  (*Id.* at

24  28).  Then, when plaintiff appealed that appellate decision, the same employee upheld it.  (*Id.*

25  at 30).

26    Plaintiff misconstrues the right to have the withholding of a publication reviewed by an

27  officer other than the one who made the initial determination with a right to a third officer's

28  review of the initial appellate decision.  Here, while the same employee reviewed both appeals,

**James C. Mahan**
**U.S. District Judge**

1    he was not the same employee who made the <u>initial</u> determination.  (*See id.* at 28, 30, 50).

2    Thus, defendants did not deny plaintiff his due process right to two-level review by two

3    different officers.

4            Accordingly, plaintiff's fifth claim fails as a matter of law.

5            d.   <u>Claim seven, excessive force against Hines and Snowden</u>

6            Plaintiff claims that defendants Hines and Snowden struck and injured plaintiff while

7    he complied with their commands on July 23, 2014.  Hines admits to hitting plaintiff multiple

8    times, but defendants claim that plaintiff elbowed, attempted to bite, and held onto Hine's leg

9    while plaintiff refused to comply with Hine's and Snowden's commands to stop.

10           As previously discussed, a pretrial detainee states a claim for excessive force under the

11   Fourteenth Amendment if: (1) the defendant's use of force was used purposely or knowingly,

12   and (2) the force purposely or knowingly used against the pretrial detainee was objectively

13   unreasonable.  *Kingsley*, 135 S. Ct. at 2472–73.  Here, similar to plaintiff's excessive force

14   claim against Gardea, there are genuine issues of material fact as to what level of force was

15   reasonable for Hines and Snowden to use against plaintiff.[7]

16           Assuming all facts and inferences in favor of plaintiff, two officers attacking a pretrial

17   detainee while he complied with their orders may constitute excessive force.  Accordingly,

18   plaintiff's seventh claim survives summary judgment.

19           e.   <u>Qualified immunity</u>

20           Qualified immunity insulates public officials "from liability for civil damages insofar

21   as their conduct does not violate clearly established constitutional rights of which a reasonable

22   person would have known."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow*

23   *v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Qualified immunity is broad, protecting "all but the

24   plainly incompetent or those who knowingly violate the law."  *Lee v. Gregory*, 363 F.3d 931,

25   934 (9th Cir. 2004) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

26

27           [7] The court notes that officer Snowden apparently had a video of this altercation
     available for review when he gave his comment, but the video is not available to the court.
28   (ECF No. 276-5 at 21).  Regardless of why the video is missing, the court is left with two self-
     serving accounts of this altercation which both turn on credibility.

James C. Mahan
U.S. District Judge

                                          - 12 -

1    Determining whether a defendant is entitled to qualified immunity in a Section 1983

2    action entails a two-part, conjunctive analysis exercised in the order the court deems

3    appropriate.   First, a court must consider whether the defendant's actions violated a

4    constitutional right.  *Conn v. City of Reno*, 572 F.3d 1047, 1062 (9th Cir. 2009).  In making

5    this inquiry, the court views facts in the light most favorable to the party asserting the injury.

6    *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002).

7    Second, the court must determine whether the constitutional right was clearly

8    established.  *Conn*, 572 F.3d at 1062.  A right is clearly established if "it would be clear to a

9    reasonable officer that his conduct was unlawful in the situation he confronted."  *Id.* at 1062

10   (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)); *see also City & Cty. of San Francisco,*

11   *Calif. v. Sheehan*, 575 U.S. 600, 611 (2015) ("An officer 'cannot be said to have violated a

12   clearly established right unless the right's contours were sufficiently definite that any

13   reasonable official in [his] shoes would have understood that he was violating it . . . .' "

14   (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014)).

15   In making this inquiry, the court should consider "the specific context of the case" and

16   not "broad general proposition[s]."  *Saucier*, 533 U.S. at 201.  It is the plaintiff's burden to

17   show that the constitutional right was clearly established.  *Sorrels v. McKee*, 290 F.3d 965,

18   969 (9th Cir. 2002).

19   As to plaintiff's first and seventh claims, the court determined that genuine questions

20   of material fact exist as to whether defendants violated plaintiff's constitutional right to be free

21   from excessive force.  *Supra* Parts III.B, III.D.  For both claims, the factual disputes revolve

22   around plaintiff's conduct prior to defendants' use of force.  Specifically, the parties dispute

23   whether plaintiff was compliant with the officers' commands or violently and aggressively

24   protesting them.  Settling these factual disputes is crucial to determine whether the officers'

25   use of force was reasonable.  *See Graham*, 490 U.S. at 396.  Thus, the court determines whether

26   qualified immunity is appropriate while assuming all facts in the light most favorable to

27   plaintiff.  *See Scott v. Harris*, 550 U.S. 372, 381 n.8 (2007).

28

James C. Mahan
U.S. District Judge

1    As to plaintiff's first claim against Gardea's for use of excessive force, plaintiff alleges

2  that Gardea caused plaintiff injury by applying excessive pressure to and yanking around

3  handcuffs over an existing injury in plaintiff's wrist.  While Gardea may not have known about

4  this injury when he first applied pressure, plaintiff alleges that he explained his injury after

5  Gardea first applied pressure.  According to plaintiff, Gardea responded to plaintiff's cries of

6  pain by laughing and applying even more pressure before dragging the handcuffs up and down

7  plaintiff's wrists, causing cuts and bruises.

8    The excessive force reasonability determination requires a view of the incident from

9  the perspective of a reasonable officer on the scene.  *See Kingsley*, 576 U.S. at 397 (holding

10  that an excessive force reasonability determination must view incidents from the perspective

11  of a reasonable officer on the scene, including what the officer knew at the time, not with the

12  20/20 vision of hindsight (citing *Graham*, 490 U.S. at 396)).  Thus, while a reasonable officer

13  would not have known that applying pressure to plaintiff's wrists would cause excessive harm

14  in the first instance, he would know that responding to plaintiff's cries of pain by applying

15  additional pressure and yanking the handcuffs to the point of further injury would be an

16  objectively unreasonable application of force.  *See Graham* 490 U.S. at 396; *Kingsley*, 576

17  U.S. at 398.

18    As to plaintiff's seventh claim against Snowden and Hines, a reasonable officer would

19  also know not to attack an already restrained, passively resisting pretrial detainee without first

20  attempting to impose lesser force.  *See Davis v. City of Las Vegas*, 478 F.3d 1048, 1057 (9th

21  Cir. 2007).  Therefore, summary judgment through qualified immunity is not appropriate on

22  plaintiff's first and seventh claims.

23  **IV.    CONCLUSION**

24    Accordingly,

25    IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendants' motion

26  for summary judgment (ECF No. 166, 262) be, and the same hereby is, GRANTED in part and

27  DENIED in part.  The court GRANTS summary judgment in favor of defendants on plaintiff's

28  first claim as to the issues of due process from plaintiff's classification as max status and from

**James C. Mahan**
**U.S. District Judge**

the cumulative conditions of plaintiff's confinement, as well as on plaintiff's fifth claim.  The court DENIES summary judgment on plaintiff's first claim as to the issue of excessive force against Gardea and plaintiff's seventh claim as to the issue of excessive force against Snowden and Hines.

IT IS FURTHER ORDERED that plaintiff's motion for leave to file a surreply (ECF No. 280) is GRANTED.

The clerk is instructed to seal plaintiff's response.  (ECF No. 276).  The clerk is further instructed to enter judgment in favor of defendants Baker, Cadet, Neville, Saavedra, Camp, Mashore, Mendoza, and Storey.

DATED November 29, 2021.

_____
UNITED STATES DISTRICT JUDGE

James C. Mahan
U.S. District Judge

- 15 -